IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DIONNTEZ BYNER, #187 749,       )
                                )
        Plaintiff,              )
                                )
    v.                          )   CASE NO. 2:19-CV-432-MHT-CSC
                                )            [WO]
JEFF DUNN, *et al.*,            )
                                )
        Defendants.             )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.    INTRODUCTION

*Pro se* Plaintiff Dionnetez Byner ("Byner") files this 42 U.S.C. § 1983 Complaint alleging Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment because they failed to protect him from an inmate assault during his incarceration at the Easterling Correctional Facility ("ECF"), in Clio, Alabama. Byner sues former Commissioner Jefferson Dunn, Warden Walter Myers, correctional cubical operator Theresa Marshall, and Correctional Officers Jerrad Bryant and Derek Simmons. For relief, Byner requests trial by jury, an injunction requiring Defendants to take reasonable and meaningful steps to insure inmate safety, an award of punitive, compensatory, and nominal damages, and costs and expenses. Doc. 1 at 2, 5–6; Doc. 44.[1]

---

[1] All documents and attendant page numbers cited herein are those assigned by the Clerk of this Court in the docketing process.

Defendants filed an Answer, Written Report with supplement, and supporting evidentiary materials addressing Byner's claims for relief. Docs. 40, 41, 53.  In these filings, Defendants deny they acted in violation of Byner's constitutional rights.  Upon receipt of Defendants' reports, the Court entered an Order which provided Byner an opportunity to file a response.  Doc. 54.  This Order advised Byner his response should be supported by affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. 54 at 1–2. The Order further cautioned Byner that unless "sufficient legal cause" is shown within ten days of entry of the Order "why such action should not be undertaken, the court may at any time [after expiration of the time for his filing a response] and without further notice to the parties (1) treat the [written] report, as supplemented, and any supporting evidentiary materials as  a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion . . . in accordance with law." Doc. 54 at 2. Byner responded to Defendants' report, as supplemented, *see* Doc. 55, but his response does not demonstrate there is any genuine dispute of material fact. The Court will treat Defendants' Written Report with supplement as a Motion for Summary Judgment, and recommends this motion be resolved in favor of Defendants.

## II.   STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc*., 498 F.3d 1258, 1263  (11th Cir. 2007) (per curiam); Fed. R. Civ. P. 56(a) (holding that "[t]he court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").   The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the non-moving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id*. at 322−324.

When Defendants meet their evidentiary burden, as they have, the burden shifts to Byner to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials], the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ."); *see also Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (holding that the court should consider facts pled in a plaintiff's sworn complaint when considering summary judgment). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable factfinder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263. The evidence must be admissible at trial,

and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249–50 (1986); Fed. R. Civ. P. 56(e). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice . . . ." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Only disputes involving material facts are relevant, and materiality is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248. However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.  At the summary judgment stage, this Court should accept as true "statements in [Plaintiff's] verified complaint, [any] sworn response to the [Defendants'] motion for summary judgment, and sworn affidavit attached to that response[.]" *Sears v. Roberts*, 2019 WL 1785355, *3 (11th Cir. April 24, 2019); *see also United States v. Stein,* 881 F.3d 853 (11th Cir. 2018) (holding that a plaintiff's self-serving and uncorroborated, but not conclusory, statements in an affidavit or deposition may create an issue of material fact which precludes summary judgment); *Feliciano v. City of Miami*

*Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (citations omitted) ("To be sure, [plaintiff's] sworn statements are self-serving, but that alone does not permit us to disregard them at the summary judgment stage. . . . 'Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving.'"). However, general, blatantly contradicted and merely "[c]onclusory, uncorroborated allegations by a plaintiff in [his verified complaint or] an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion." *Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) (*citing Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)); *see also Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (holding that conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the Court, a *pro se* litigant does not escape the burden of sufficiently establishing a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, a plaintiff's *pro se* status alone does not mandate this Court disregard elementary principles of production and proof in a civil case. Here, Byner fails to demonstrate a requisite genuine dispute of material fact to preclude summary judgment on his claims against Defendants. *See Matsushita*, 475 U.S. at 587.

## III.   DISCUSSION[2]

## A.   Sovereign Immunity

To the extent Byner sues Defendants in their individual and official capacities, they are entitled to sovereign immunity from monetary damages in their official capacity. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied.  Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (citation and quotation marks omitted).  Thus, a state official may not be sued in his official capacity unless the State has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

---

[2] In accordance with applicable federal law, the Court limits its discussion to the claims identified in the Complaint. *Gilmour v. Gates, McDonald & Co*., 382 F.3d 1312, 1315 (11th Cir. 2004) (holding that "[a] plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment."); *Ganstine v. Secretary, Florida Dept. of Corrections*, 502 F. App'x 905, 909-10 (11th Cir. 2012) (holding that a plaintiff may not amend complaint at the summary judgment stage by raising a new claim or presenting a new basis for a pending claim); *Chavis v. Clayton County School District*, 300 F.3d 1288, 1291 n. 4 (11th Cir. 2002) (noting that district court did not err in refusing to address a new theory raised during summary judgment because the plaintiff had not properly amended the complaint with respect to such theory).

> Neither waiver nor abrogation applies here. The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art. I, § 14.  The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit.

*Selensky*, 619 F. App'x at 849.   "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it."  *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence*, Ala., 916 F.2d 1521, 1525 (11th Cir. 1990)).

In light of the foregoing, Defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacity. *Selensky*, 619 F. App'x at 849; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994).

## B.    Qualified Immunity

Qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is not merely a defense against liability but immunity from suit, and the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009) (quotation marks and citation omitted). To receive qualified immunity, the public official must first prove he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284

F.3d 1188, 1194 (11th Cir. 2002). There is no dispute that Defendants here were acting within the course and scope of their discretionary authority when the challenged incidents occurred. Byner must, therefore, allege facts that, when read in a light most favorable to him, show that Defendants are not entitled to qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

To satisfy his burden, Byner must show two things: (1) that a defendant committed a constitutional violation and (2) that the constitutional right a defendant violated was "clearly established." *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004). "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. . . . In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citations and quotation marks omitted) (alteration in original). "Clearly established law" means (1) "a materially similar case has already been decided;" (2) "a broader, clearly established principle that should control the novel facts of the situation;" or (3) "the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary." *Gaines v. Wardynski*, 871 F.3d 1203, 1208–09 (11th Cir. 2017) (citations omitted). The controlling authority is from "the Supreme Court of the United States, the Eleventh Circuit, or the highest court in the relevant state." *Id.* at 1209. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (citations and quotation marks omitted). The Eleventh Circuit "has

stated many times that if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Gaines*, 871 F.3d at 1210 (citations and quotation marks omitted). "Exact factual identity with the previously decided case is not required, but the unlawfulness of the conduct must be apparent from pre-existing law." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (citation omitted). If a plaintiff cannot establish both elements to satisfy his burden, the defendants are entitled to qualified immunity, and the court may analyze the elements "in whatever order is deemed most appropriate for the case." *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (*citing Pearson*, 555 U.S. at 241–42).

## C.    Deliberate Indifference

### i.    Standard of Review

"A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennan*, 511 U.S. 825, 844–45 (1994) (citations and quotation marks omitted). Correctional officials may be held liable under the Constitution for acting with "deliberate indifference" to an inmate's safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards that risk by failing to take reasonable measures to abate it. *Id.* at 828. "It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety." *Id*. at 834. "Within [a prison's] volatile 'community,' prison administrators are to take all necessary steps to ensure the safety of . . . the prison

staffs and administrative personnel. . . . They are [also] under an obligation to take reasonable measures to guarantee the safety of the inmates themselves." *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). The Eleventh Circuit, however, has "stress[ed] that a 'prison custodian is not the guarantor of a prisoner's safety.'" *Purcell ex rel. Estate of Morgan v. Toombs County, Ga.*, 400 F.3d 1313, 1321 (11th Cir. 2005) (quoting *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990)). "Only [a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (citation and quotation marks omitted). "[D]eliberate indifference describes a state of mind more blameworthy than negligence" and, therefore, ordinary lack of due care for a prisoner's health or safety will not support an Eighth Amendment claim. *Farmer*, 511 U.S. at 837. "In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation [under the Eighth Amendment], there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to a constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (citation omitted).

Settled law requires the establishment of both objective and subjective elements to demonstrate an Eighth Amendment violation. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014). Regarding the objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed]. ). Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner."

*Marsh v. Butler County, Ala*., 268 F.3d 1014, 1028-29 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments'. . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837-38; *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (*citing Farmer*, 511 U.S. at 838) (explaining that "[p]roof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same). The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]" *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been subjectively aware of the substantial risk of serious harm in order to have had a sufficiently culpable state of mind. *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991). . . . Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists – and the prison official must also draw that inference. *Farmer*, 511 U.S. at 837, 14 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) (quotation marks omitted). A defendant's subjective knowledge of the risk must be specific to that defendant because

"imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. . . . Each individual defendant must be judged separately and on the basis of what that person [knew at the time of the incident]." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). Moreover, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and quotation marks omitted). "Merely negligent failure to protect an inmate from attack does not justify liability under section 1983." *Id*. Even where a prison official perceives a serious risk of harm to an inmate, the official "may still prevail if he responded reasonably to the risk, even if the harm ultimately was not averted." *Comstock v. McCrary*, 273 F.3d 693, 706 (6th Cir. 2001) (citation and quotation marks omitted). In sum, prison officials cannot be held liable under the Eighth Amendment unless there is an objectively substantial risk of harm to an inmate, the defendants have knowledge of this substantial risk of harm, and with this knowledge, consciously disregard the risk. *Farmer*, 511 U.S. at 837.

Consequently, to survive the properly supported motion for summary judgment filed by Defendants, Byner must first demonstrate an objectively substantial risk of serious harm existed to him prior to the inmate attack at issue and "that the defendant[s] disregarded that known risk by failing to respond to it in an objectively reasonable manner." *Johnson v. Boyd*, 568 F. App'x 719, 721 (11th Cir. 2014) (citation omitted).  If he establishes these objective elements, Byner must then satisfy the subjective component.  To do so, Byner "must [show] that the defendant subjectively knew that [Byner] faced a substantial risk of serious harm.  The defendant must both be aware of facts from which the inference could

be drawn that a substantial risk of serious harm exists, and [the defendant] must also draw the inference." *Id*. (internal citation omitted). It is not required that a prison official know "precisely who will attack whom, but only that the prison official had subjective knowledge of a generalized, substantial risk of serious harm from inmate violence. *Hale v. Tallapoosa County*, 50 F.3d 1579, 1583 (11th Cir. 1995) (internal quotation marks and citations omitted). The inmate's failure to provide advance notice of an attack is relevant, but not dispositive. *Id*. (citation omitted).

> To survive a motion for summary judgment, a plaintiff must submit evidence that the defendant-official had subjective knowledge of the risk of serious harm. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). In determining subjective knowledge, a court is to inquire whether the defendant-official was aware of a particular[ized] threat or fear *felt by [the] [p]laintiff. Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003). Moreover, the defendant-official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists—and the prison official must also draw that inference. *Id*. at 1349 (quotations omitted).

*Johnston v. Crosby*, 135 F. App'x 375, 377 (11th Cir. 2005) (quotation marks omitted) (emphasis in original).

### ii.     Failure to Protect

Byner alleges Defendants failed to protect him from an inmate assault. He states that on July 6, 2017, between 8:00–9:00 p.m., an inmate repeatedly stabbed him in his dorm at ECF. Byner claims Defendants Marshall, Bryant, and Simmons were present during the incident but failed to intervene or otherwise attempt to prevent or stop the assault. The inmate who committed the assault, Byner contends, had freely left his assigned living quarters without being questioned or stopped by the "officers involved." Byner

alleges Commissioner Dunn failed to take reasonable steps to insure inmate safety and displayed deliberate indifference to the alarming epidemic of violence in Alabama's prisons. As Warden of ECF during the relevant time period, Byner contends Warden Myers was responsible for the overall operation of the institution but displayed deliberate indifference to the "clear and apparent safety concerns" based on the number of assaults and murders at the facility. Doc. 1 at 2, 5–6.

Defendants deny they acted with deliberate indifference to Byner's safety and argue he fails to show they failed to protect or provide him with adequate security. Defendants' evidence includes Defendants' affidavits and other prison and medical records. Defendant Bryant testifies that on July 6, 2017, he was on Dorm E1 side conducting count when he heard Defendant Marshall radio for assistance on Dorm E2 side on observing Byner and another inmate fighting inside Dorm E2. Defendant Bryant further testifies: "I entered E2 side and observed Christopher Tremble . . . walking to the back of the dorm with scratch marks and blood on his facial area. Correctional Officer Derek Simmons and I escorted inmates Byner and [T]remble to the Health Care unit for medical assessment. Inmate Byner reported that the incident started over an argument about a bed and a locker box." Doc. 40-2 at 1–2.

Defendant Simmons testifies that on July 6, 2017, he was on Dorm E1 side conducting count when he heard Defendant Marshall radio for assistance on E2 side on observing Byner and inmate Tremble fighting with weapons inside Dorm E2. Defendant Simmons further testifies: "Upon arriving I observed inmate Christopher Tremble . . . walking towards the other side of the dorm with scratch marks and blood on his facial area.

Correctional Officer Jared [sic] Bryant and I escorted Inmates Byner and Tremble to the Health Care Unit for Medical Assessment. Inmate Byner reported that the incident started over an argument about a bed and locker box." Doc. 40-3 at 1–2.

Defendant Marshall testifies that on July 6, 2017, at approximately 10:00 p.m., she observed Byner and inmate Tremble fighting with weapons inside of Dormitory E2 and requested all available officers to report to the dorm for assistance. Defendant Marshall further testifies that Defendants Bryant and Simmons responded to the scene in response to her request and that Byner and Tremble were subsequently escorted to the healthcare unit for assessment by medical staff. Doc. 40-3 at 1–2.

In his affidavit, Defendant Myers testifies that both Byner and inmate Tremble were assigned to Dorm E at the time of the incident. Defendant Myers further testifies that: "Inmate Byner also claims that I have shown deliberate indifference to clear safety concerns attested to by the rate of assaults and murders at Easterling Correctional Facility. There have been no murders at Easterling during my tenure and Easterling Correctional Facility's staff conducts numerous unannounced searches in effort to rid the facility of handmade weapons and drugs to ensure inmate safety. Inmate Byner never made any complaints that he feared for his safety or was in danger of inmate Tremble." Doc. 53-1 at 1–2.

Defendant Dunn testifies that he has no personal knowledge of inmate Tremble or how the alleged conditions of Byner's confinement contributed to or caused the assault about which he complains. As Commissioner of the Alabama Department of Corrections during the relevant time period, Defendant Dunn states he had no involvement in the day-

to-day operations at ECF. Defendant Dunn further testifies, in part: "I categorically deny that there is an 'alarming epidemic of violence' at Easterling. Regardless of this characterization of the number of violent incidents occurring at Easterling, I do not condone any level of violence in any of the ADOC's facilities. . . . Since my appointment to the position of Commissioner in 2015, my executive staff and I have worked diligently to improve the overall conditions of all Alabama prisons (including Easterling), increase security staffing, decrease the levels of violence, and decrease the amount of contraband coming into the facilities that contribute to acts of violence among the inmate population." Doc. 53-2 at 1–8.[3]

The parties do not dispute that Byner had no documented enemies prior to the July 6, 2017, incident.  Docs. 46, 53-1.  After the assault, Byner and inmate Tremble were validated as enemies.  Doc. 53-1.

Here, Byner does not present any evidence showing inmate Tremble posed "an objectively substantial serious risk of harm" to him prior to the assault about which he complains. Byner makes no allegation that prior to the challenged incident he complained to any prison official, or made any prison official aware, that he was in danger of being attacked by a fellow inmate. Byner does not indicate he knew he was in any danger prior to the attack. Docs. 1, 46. It is undisputed Defendants had no information of any threat to Byner from another inmate from which they could infer that a substantial risk of harm

---

[3] Defendant Dunn's affidavit includes a description of the numerous measures he and his executive staff worked on while he was Commissioner in an effort to improve overall conditions in Alabama's prison, including Easterling. Doc. 53-2.

existed to Byner prior to the attack at issue.  *Carter*, 352 F.3d at 1349, 1350 (explaining that "there must be much more than mere awareness of [a] ... generally problematic nature [of another inmate].... [A] generalized awareness of risk ... does not satisfy the subjective awareness requirement."); *see also Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996) (observing that "threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm."). Instead, the record reflects that the altercation occurred without notice or provocation.  Byner has also not shown that the conditions under which he was incarcerated presented a "substantial risk of harm" to him. *Farmer,* 511 U.S. at 834, to which Defendants responded in an objectively unreasonable manner. *Marsh,* 268 F.3d at 1028–1029. His conclusory allegations of unsafe and unsecure conditions is insufficient. *See* Doc. 46 at 2–4.

Even had Byner satisfied the objective component of his deliberate indifference claim, he fails to establish the subjective component because he has not shown that any Defendant subjectively knew of a risk of harm to him posed by inmate Tremble, or any inmate for that matter. *Caldwell*, 78 F.3d at 1099-1100 (explaining a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").  Byner's  contention that Defendants violated his constitutional rights because they knew Easterling experienced numerous instances of violence thereby making it unsafe is not evidence that any Defendant was subjectively aware of a substantial risk of serious harm to Byner posed by inmate Tremble at the time of the challenged assault. *Johnson*, 568 F. App'x at 722 (explaining that complaint properly dismissed for failure to state a claim because "[n]owhere does the

17

complaint allege, nor can it be plausibly inferred, that the defendants subjectively foresaw or knew of a substantial risk of injury posed by [inmate-attacker].”); *Johnston*, 135 F. App'x at 377 (observing that where allegations simply inferred that prison officials should have known the inmate-attacker posed a threat to others due to past behavior and general verbal threats, defendants were entitled to summary judgment because plaintiff provided no evidence that prison officials “had subjective knowledge of the risk of serious harm presented by [fellow inmate]” and “introduced no evidence indicating that he notified [the defendants] of any particularized threat by [his attacker] nor of any fear [he] felt.”); *Murphy v. Turpin*, 159 F. App'x 945, 948 (11th Cir. 2005) (explaining that “because [Plaintiff] alleged no facts indicating that any officer was aware of a substantial risk of serious harm to him from [his attacker] and failed to take protective measures, his [failure to protect] claim fails.”); *Harrison*, 746 F.3d at 1300 (explaining that although increasing the number of officers in an area of the facility “may have improved security, [the warden's] decision not to do so did not create a substantial risk of harm); *Staley v. Owens*, 367 F. App'x 102, 108 (11th Cir. 2010) (holding that plaintiff failed to demonstrate supervisory liability as the mere fact that isolated inmate assaults may have occurred over several years “is not sufficient to establish that there was a history of widespread abuses that supervisors failed to reasonably respond to”).

Further,  without disputing that inmate-on-inmate assaults occur in the correctional system and assuming the institutional facility was experiencing understaffing at the time of the challenged incident, Byner presents no direct facts, as opposed to conclusions, to support his general allegations that Easterling was understaffed and had a “high level of

attacks and violence" when he was assaulted nor does he show that these conditions constituted a contributing factor to the July 6, 2017, attack. Moreover, no evidence has been presented of rampant violence at Easterling. Settled law holds that an occasional and isolated attack by one prisoner on another does not demonstrate the existence of unconstitutional conditions inside the prison. *Purcell*, 400 F.3d at 1320.  Likewise, the failure of a correctional official "to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as [a constitutional violation]." *Farmer*, 511 U.S. at 838.  A prison is an inherently dangerous place which is why the law requires a plaintiff asserting an Eighth Amendment violation to show the defendants had knowledge of a "strong likelihood, rather than a mere possibility" of injury. *Brown*, 894 F.2d 1537 (internal quotation marks and citations omitted).  As determined, Byner fails to make such a showing in this case.

The record is devoid of evidence that any Defendant, or Byner himself,  knew he was at risk of being attacked by inmate Tremble or any other inmate. There is no evidence any Defendant knew specific facts from which an inference could be drawn that a substantial risk of harm existed to Byner, that Defendants actually drew this inference, and, thereafter, ignored the known risk. Byner has not presented facts sufficient to create a genuine dispute regarding "actual knowledge" of a substantial risk of harm. *See Marbury v. Warden*, 936 F.3d 1227, 1236 (11th Cir. 2019) (discussing "[t]he unfortunate reality [ ] that threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm.") (internal quotations and citation omitted).

Inmate Tremble's  assault on Byner was an unfortunate event. It does not, however, reflect deliberate indifference by Defendants. Rather, the evidence indicates that inmate Tremble's assault on Byner was a sudden, random, and isolated incident. *See Curry v. Crist*, 226 F.3d 974, 979 (8th Cir. 2000) (affirming summary judgment where a prisoner was injured during a surprise attack by another inmate); *Chatham v. Adcock*, 334 F. App'x 281, 293-94 (11th Cir. 2009) (explaining that plaintiff was entitled to no relief where he failed to identify "any specific 'serious threat' from [his inmate attacker], which he then reported to [the defendants] prior to [the attack]."). Upon observing Byner and inmate Tremble in an altercation, Defendant Marshall requested assistance from all available officers who responded to the scene and Byner was thereafter promptly escorted to the healthcare unit for evaluation of his injuries. Shortly thereafter, prison medical personnel determined Byner required emergent care, and he was transported to the Southeast Alabama Medical Center via Life Flight Helicopter. The incident was then reported to an agency investigator. Docs. 40-1; 40-5 at 16, 73, 74.

Because Byner has failed to show Defendants actually knew that a substantial risk of serious harm existed, he has failed to satisfy the subjective element of his Eighth Amendment claim as well. *Carter*, 352 F.3d at 1350. Since the record fails to demonstrate that the incident between Byner and inmate Tremble occurred due to any deliberate indifference or reckless disregard by Defendants, they are entitled to qualified immunity and summary judgment is due to be granted in their favor on Byner's failure to protect claim. *See Celotex Corp.*, 477 U.S. at 322.

### iii.    Failure to Intervene

Byner complains that the Defendant officers failed to intervene or otherwise stop the attack on him by inmate Tremble. Liability for such claim attaches only if a defendant was in a position to intervene in the altercation. Defendant Marshall, as cubicle operator, monitored events in the dorm from the cube and alerted officers upon seeing Byner and inmate Tremble fighting. Defendants Bryant and Simmons were not in Dorm E2 at the time of the assault. Both officers responded to the area of the attack upon hearing of the incident at which time the event was over and they observed inmate Tremble walking to another area of the dorm. Docs. 40-2, 40-3, 40-4.  Byner concedes in his response to Defendants' dispositive motion that the Defendant officers were not physically present on the floor of his dorm when the attack occurred. Doc. 46 at 3.

"Prison correctional officers may be held directly liable under § 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence.  *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998).  However, in order for liability to attach, the officer must have been in a position to intervene." *Terry v. Bailey*, 376 F. App'x 894, 896 (11th Cir. 2010).  "An officer who fails to intervene in a fight between inmates can only be held liable if he 'was physically able and had a realistic chance to intervene and act in time to protect the inmate Plaintiff.'  *Glispy v. Raymond*, 2009 WL 2762636 (S.D. Fla., Aug. 28, 2009) (*citing Ensley*, 142 F.3d at 1407; *Byrd v. Clark*, 783 F.2d 1002 (11th Cir. 1986))." *Seals v. Marcus*, 2013 WL 656873, at *7 (M.D. Ga. 2013).  Byner has the burden of demonstrating a defendant was in a position to intervene but failed to do so.  *Ledlow v. Givens*, 500 F. App'x 910, 914 (11th Cir. 2012) (*citing Hadley v. Gutierrez*, 526 F.3d 1324,

1330–1331 (11th Cir. 2008)). Because Byner presents no evidence that Defendants Marshall, Simmons, or Bryant were in a position to intervene and act in time to stop inmate Tremble's attack on him, they are entitled to qualified immunity and summary judgment is due to be granted in their favor on the failure to intervene claim.[4]

## D.   Respondeat Superior

Byner sues former Commissioner Dunn and Warden Myers based on their supervisory positions. However, supervisory personnel cannot be liable under § 1983 for a constitutional violation of one of their subordinates via a theory of *respondeat superior* or on the basis of vicarious liability. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691-95 (1978)  (finding the doctrine of *respondeat superior* is inapplicable to § 1983 actions); *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of *respondeat superior* or vicarious liability); *see also  Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (holding that a supervisory official is liable only if he "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [his] actions ... and the alleged constitutional deprivation."); *Antonelli v. Sheahan*, 81 F.3d 1422, 1428 (7th Cir. 1996) ("a prisoner may not attribute any of his constitutional claims to higher officials by the doctrine of *respondeat superior*;

---

[4] The Court addresses the failure to intervene claim in accordance with various panel opinions of the Eleventh Circuit which rely on *Ensley* to dispose of this type of claim.  The Court is aware that the Eleventh Circuit in *Johnson* noted "[w]hile it is well settled that *Ensley* applies to situations where one officer observes a fellow officer violating a constitutional right, typically by using excessive force, we have not explicitly adopted this holding in a situation involving an officer observing a fight between inmates."  568 F. App'x at 722 n.2.

the official must actually have participated in the constitutional wrongdoing."). Thus, Defendants Dunn and Myers are liable for the challenged conduct of their subordinates only if they "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [their] actions . . . and the alleged constitutional deprivation[s]." *Cottone*, 326 F.3d at 1360 (citation omitted).

Defendants Dunn and Myers were not present when Byner was assaulted by inmate Tremble. Thus, these defendants may be held liable only if their actions bear a causal relationship to the purported violation of Byner's constitutional rights. To establish the requisite causal connection and avoid entry of summary judgment in favor of these defendants, Byner must present sufficient evidence of either "a history of widespread abuse [that] put[] [the defendants] on notice of the need to correct the alleged deprivation, and [they] fail[ed] to do so...." or "a ... custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or ... facts [that] support an inference that [Dunn and Myers as supervisory officials] directed the subordinates to act unlawfully, or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted). A thorough review of the pleadings and evidentiary materials submitted demonstrates Byner has failed to meet this burden.

Byner has presented no evidence of obvious, flagrant or rampant abuse of continuing duration in the face of which Defendants Dunn or Myers failed to take corrective action. While Byner generally contends inmate Tremble's attack resulted from the supervisory defendants' alleged failure to provide adequate safety and security

measures, he presents no evidence, substantially probative or otherwise, that the attack by inmate Tremble was the proximate result of these alleged deficiencies. Byner's conclusory assertions, without more, are insufficient to establish the requisite causal connection. Moreover, no evidence has been presented which indicates the actions about which Byner complains occurred pursuant to a policy enacted by the supervisory defendants or due to a lack of supervision or training. Thus, Byner has failed to establish liability under the custom or policy standard. *Cf. Employment Div. v. Smith*, 494 U.S. 872, 877 (1990); *Turner v. Safely*, 482 U.S. 78 (1987). Consequently, neither method of establishing liability under the causal relationship test provides a basis for liability under § 1983. Defendants Dunn and Myers are therefore entitled to qualified immunity and summary judgment is due to be granted in their favor on this claim.

## IV.   CONCLUSION

Based on the foregoing, the undersigned Magistrate Judge RECOMMENDS that:

1.  Defendants' Motion for Summary Judgment (Doc. 40) be GRANTED.

2.  Judgment be ENTERED in favor of Defendants

3.  This case be DISMISSED with prejudice.

It is ORDERED that by **July 25, 2022**, the parties may file objections to this Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive or general objections will not be considered by the Court. This Recommendation is not a final order and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH Cir. R. 3–1. *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done, this 11th day of July 2022.

/s/  Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE